The next case is Pyle v. City of Granite City and Mr. Phillips May it please the court, good morning members of the panel, council My name is Erin Phillips from the law firm of Unseld and Shatnick and I'm here this morning on behalf of the appellants, the City of Granite City defendants in this matter The issues that are presented here on appeal arise out of a statute commonly known as the Public Safety Employee Benefit Statute located at 820 ILCS 320-10 This is commonly referred to as the PSEBA so if at some point throughout my argument I fall into that name what I'm referencing is that statute in its short form known as the PSEBA While the PSEBA has been considered in other districts throughout the state of Illinois I believe that this is the first time that the Public Safety Employee Benefits Act statute has been considered by this court The purpose of Section 10 is to protect public safety officers who have been catastrophically injured in the line of duty from having to pay for their health insurance premiums as their earning power is assumed to be very limited once a catastrophic injury has occurred and that statement comes from the line of reasoning in a case entitled Krohe v. City of Bloomington which is an Illinois Supreme Court decision in 2003 and it is the preeminent decision in this case with respect to the statute as in 2003 the Illinois Supreme Court provided a definition for a very important element of the statute namely what is meant to have suffered a catastrophic injury Here in this appeal we are asking the court to consider three issues and the first issue is the preliminary issue of whether or not plaintiff Pyle was quote catastrophically injured as contemplated in the statute by virtue of having been awarded a line of duty disability pension and the defendants concede and recognize that the Krohe opinion in 2003 brought forth that definition that it indicated and stated that we find the Supreme Court at that point in time said we are going to equate a catastrophic injury to a receipt of a line of duty disability pension and so that is the first issue that has been preserved for appeal I would like to clarify though that there are two additional issues which are first impression issues having to deal with the PSEBA two issues that have never been contemplated by any other district in this state nor this fifth district and the first one of those is that if plaintiff is entitled to the PSEBA benefits because he has satisfied the statutory requirements first are those benefits to be provided for life are they lifetime benefits that are contemplated by the statute and the second issue is even if those can be contemplated as lifetime benefits how does the interplay of the receipt of Medicare work in conjunction with that statute namely would the receipt of Medicare extinguish the obligation that is set forth in the statute so that is the background that we are dealing with in this case briefly a short fact pattern as this goes back a number of years is that initially the plaintiff was injured in September of 1999 as a firefighter at that time he was a captain in the fire department with the city of Granite City the defendants do not dispute nor have they ever disputed that Mr. Pyle was injured in the line of duty in September of 1999 thereafter in November of 1999 he underwent a surgery to his low back in early 2000 he sent for a functional capacity evaluation and as part of that functional capacity evaluation it was determined that there were two areas that Mr. Pyle was able to do and the first was that he could lift 85 pounds from floor to waist and the second was that he could lift 60 pounds from waist to shoulder and from shoulder to overhead now how this comes into play here is that ultimately then Mr. Pyle's treating physician placed the permanent restriction of no lifting over 50 pounds occasional bending twisting or scooping this restriction led him to be able to be eligible and required in fact that he apply for a in line of duty disability pension under the pension code he qualified through that proceeding to become eligible for that line of duty disability pension and was ultimately awarded that after receipt of the line of duty disability pension the deposition below reflects that he did work for a brief period of time at an Ace Hardware store subsequent to his disability retirement upon retirement from the fire department plaintiff Pyle did continue to receive health care coverage and has continued to receive health care coverage throughout the entirety of his time since 2004 and that was by the operation of a statute known as the fireman's continuance privilege which is a portion of the Illinois insurance code and under the Illinois insurance code that privilege allows a fireman to elect continued coverage the same as he had on his last day of employment prior to the retirement whether by operation of a disability retirement or a normal retirement and due to Mr. Pyle's specific union membership there was an agreement reached wherein the union would agree to pay for a portion of his premiums to continue that health care coverage from the time he was awarded the disability pension in 2000 until he attained Medicare eligibility in 2008 specifically the first year the union paid for 80% of that coverage the plaintiff paid for 20% of that coverage thereafter it went to a 60-40 split between the union and the plaintiff as to who would maintain that coverage effective in 2008 Mr. Pyle attained the age of age 65 became Medicare eligible and at that point the union ceased to pay for any portion of any coverage because there was a change in circumstance once he became Medicare eligible the plan that Mr. Pyle would now receive through the fireman's continuance privilege is a supplemental Medicare plan it's a supplement to the Medicare it is not a primary plan that's now in effect for Mr. Pyle So the Medicare eligible position of Mr. Pyle makes your obligation reduced, right? Your Honor, that is not the position of the defendants here it is our position that prior to the Medicare eligibility being attained that there was a reduction by the operation of what was paid through the union however, the position of the defendants is that once the Medicare comes into force he's eligible for Medicare that that actually becomes the primary plan It replaces the insurance plan paid by the city to the extent that the Medicare covers Correct, Your Honor and that position arises out of the direct language of the statute The statute states that the requirement is a continuance of the employer's health insurance plan and it actually defines the health insurance plan within the statute and states that it does not include any supplemental benefits Once a person has attained the Medicare eligibility at that point there is no employer's health insurance plan Prior to that time there is a plan that's in place for people who are less than age 65 who have either voluntarily retired or have been forced to take retirement due to a disability There is this plan available that allows them through the fireman's continuance privilege to stay on a plan that is the same as if they had continued employment and this is in accord with the intent of the statute and in accordance with what Prohi has interpreted previously to say that we want to make sure that these persons who are injured who have a reduced earning capacity have access to this coverage What the defendants would ask the court to consider here however is that upon reaching age 65 that person is in the same position as any other person who would have attained the Medicare eligibility and be transitioned into a Medicare eligible plan and they say that they are still allowed and as has occurred with Mr. Pyle thus far to continue the supplemental plan but it's a supplemental plan in addition to what the Medicare covers as the primary coverage What's actually occurred in this situation is that from 2008 until the entry of the initial summary judgment order by Judge Harrison in April of 2011, Mr. Pyle paid for those premiums Since April 2011, the city has assumed the payment of those premiums pursuant to the summary judgment order that was entered below and I'd like to briefly address that issue to clarify some of the facts and address the motion to strike that's been filed by the appellee in this matter The first issue with respect to that is that the appellee has asked to strike the statement of facts of the appellant from pages 6 through 10 and what is located at pages 6 through 10 of the appellant's brief is the facts of what occurred between the April 2011 hearing and the October 2011 final appealable order that was entered What occurred below is that Judge Harrison had the opportunity in April 2011 to consider the plaintiff's motion for summary judgment wanting a finding and requesting a finding that Mr. Pyle was in fact catastrophically injured, therefore entitling him to coverage under the PSEBA and let me just briefly clarify that that's because there are two requirements for coverage There's a second triggering requirement that involves that the person was injured while responding to an emergency Mr. Pyle was responding to an emergency at the time he was injured That's never been disputed and does not come into play in these arguments So what was before Judge Harrison was whether or not Mr. Pyle satisfied the requirement of being catastrophically injured In April 2011, Judge Harrison found that he did, pursuant to pro key allowed the motion for summary judgment but then said what does that summary judgment mean in terms of the effect on who's paid these premiums, who's going to pay them into the future what interplay does Medicare have As such, the parties were instructed to go back and further brief this issue and to submit proposed orders ultimately that was resolved at the time of the final appealable order being entered in October of 2011 Therefore, defendants would ask that the court deny the motion to strike with respect to the statement of facts from pages 6 to 10 as it's an explanation of how the court came to arrive at the final appealable decision in October of 2011, which is before the court As an initial issue, I'd like to explain that the defendants are appealing this issue with respect to the croaky decision with regard to what the meaning of a catastrophic injury is because it's an issue of statutory interpretation The defendants have acknowledged since being before the trial court that this is a decision that was entered into in 2003 by the Supreme Court We understand the principles of stare decisis and that this court, as the trial court, is bound to adhere to the Supreme Court's previous rulings However, the defendants have a right of appeal have sought an appeal herein on this issue and in an attempt to perfect that appeal, have preserved it in the brief here below I'd just like to briefly touch on the fact that the defendants are not in any way suggesting that there are not circumstances where employees qualify for a catastrophic injury It's the particular circumstances and nature of Mr. Pyle's injury, the plaintiff that they are taking issue with here Additionally, the plaintiff has sought to strike multiple portions of the argument with respect to the croaky decision and the issues of stare decisis The defendants would respond to the plaintiff that in no way have the defendants ever attempted to supplement the record inappropriately in this matter It is the plaintiff's position that by attaching certain documents within the appendix and referencing secondary sources with respect to the croaky specific argument the definition of a catastrophic injury that it was an inappropriate attempt to supplement the record with items not presented to the trial court below That was not the intention of the defendants That is not the purpose for why the defendants have attached this information herein We've attached this information so that the court here and if it is considered further above, can consider public interest issues  We know that in stare decisis, one of the concerns that the court can't look at is whether or not the Supreme Court needs to go back and reconsider a prior decision based upon new issues, new circumstances, public interest, public outcry and how the defendants are able to present that to the court is through these secondary sources that indicate discussions, issues, news reports findings, studies that have addressed the concerns with the Public Safety Employee Benefit Act And because of this, the defendants would again ask that the penal deny the motions to strike with respect to the items that have been attached in the appendix as well as deny the motion to strike with respect to the arguments that are made in various points under Roman numeral I, which all address the croaky arguments Finally, the defendants would also ask this court to consider that in the event that this court determines that it must act in accords with croaky that the defendants will be submitting a rule 316 request for certification of an important issue to go out to the Supreme Court as we understand that that is a decision likely to reside with the Supreme Court One final issue with respect to the motion to strike that's been submitted by the plaintiff The plaintiff cites a case, Levy v. Markell, a 1994 case where the court, and I believe it was the 2nd District, found that there the appellants had made an inappropriate attempt to supplement the record on appeal That is a very distinguishable case from the types of information that were attached to the brief of the appellant hearing In the Levy case, you had individuals who, for the first time on appeal were raising an affirmative defense that they had no financial capacity to satisfy a judgment below So they were attempting to attach their personal financial statements, records, documents things that were personal to them that very well could have been presented as evidence to the trial court as being relevant to the individuals involved This circumstance, with the items that the appellant has sought for the court to consider and has attached in the appendix, are not personal in nature to the City of Greenwich City nor to the plaintiff in this case They are directly documents which reflect the public interest, concerns with the PSCBA and studies that have been performed And as such, we would assert to the court that the Levy case is not controlling as to this issue That being said, I would now like to turn to the two issues of first impression that are present before the court And these issues are somewhat intertwined out of the nature of the question that Judge Wexton has already suggested this morning And those two issues are whether or not it's a lifetime benefit that the statute contemplates and secondarily, how Medicare impacts that situation The first issue is that the PSCBA is not a very lengthy statute It's pretty short and there's not a lot of body of case law that surrounds it At no place in the statute does it say, lifetime benefit, paid for life, until death None of those particular words are utilized within the statute It does say that it is a requirement for the employer's health insurance plan which, as I've already advanced, would connote an employer who has a plan for active, non-retired employees not employees who have attained age 65 and are eligible for retirement There have been two recent decisions by the Illinois Supreme Court that have addressed the PSCBA One of those is a case entitled Gaffney and the other one is a case entitled Nowak And in Nowak, I would like the court to note that the Supreme Court, particularly with respect to the PSCBA said that statutes must be construed in a way so as to avoid impractical or absurd results It says, statutes creating a new liability must be strictly construed in favor of persons who are sought to be subjected to its operation Here, the plaintiff is advancing a construction by indicating that it is a lifetime benefit that would confer the maximum, to say that it would continue regardless of whether there was a Medicare recipient involved would impose the maximum liability on the city and other municipalities while conferring the maximum benefit on the plaintiff And this seems to go in direct contravention to what has most recently been stated with respect to Nowak in Nowak by the Illinois Supreme Court I will recognize that the plaintiff has asserted in the statute does indicate language that says quote, if the injured employee subsequently dies, the municipality shall continue to provide coverage for a non-married spouse or dependent children This has to be read in conjunction with the next lines of the statute that go on to in section A1 as I've already referenced which indicate that these benefits are reduced by any benefits available from any other source Given that a person who has been catastrophically injured or killed, that's what the original language of the statute states is the triggering event for eligibility The terminology of if the injured employee subsequently died makes sense that there's a contingency in place that if we have a person who's employed, becomes injured, has an injury or some life event that causes them to die at some point after that that we as a state have decided we're not going to cut that spouse or dependent children off from coverage simply because of operation of that person's injury That would go against the whole intent of the statute given that it provides benefits to a spouse or minor children in the event that the person is killed And so defendants would submit that the language of if the injured employee subsequently dies recognizes that that's read within the confines of the statute referencing that the employee actually could have been killed as a result of the injury and therefore we want to ensure that those spouses and non-married children continue to be covered I would also like the court to again consider with respect to this determination of a lifetime benefit that the plan does particularly state that the employer's health insurance plan which cannot be defined as a supplemental coordinated Medicare plan that's going to transition into our next argument with respect to the Medicare issue particularly in play in this issue And this is because the health insurance plan is actually defined at 820 ILCS 320-10 subparagraph A It very clearly says that the statute does not include supplemental benefits that are not part of the basic group health insurance plan So with respect to a situation such as that of Mr. Pyle, the PSEDA clearly under subparagraph A requires a reduction in benefits for benefits payable from any other source Now that happens in a number of ways and the defendants will acknowledge here that that has already actually occurred One way that the obligation has been reduced here is by operation of the benefits available to Mr. Pyle through his union membership But another way in which that would occur is in this situation where a person becomes Medicare eligible In Mr. Pyle's case, currently that's the issue that we have before us is that since 2008 he turned age 65 became eligible for Medicare under the traditional age 65 age limitations I'm sorry, I see that my time is up. Thank you, your honors. May it please the court, my name is Thomas Duda, I represent the plaintiff Jim Pyle, he's in the back of the room Members of the court, counsel, I'm always confused when I read the city's brief and I listen to their argument because I thought when counsel started arguing she conceded that this court has no power to reverse the interpretation of the word catastrophic injury made by the Illinois Supreme Court But in the course of her argument, counsel made the statement, if this court chooses to follow the language and definition of Croy v. City of Bloomington, then you have to reach these other issues I am a person who is most reluctant to tell any judge that that judge lacks the power to do something But I think the emphasis in my brief makes it very clear that this court does not have the power to reinterpret the term catastrophic injury That is only a power that the Illinois Supreme Court can exercise at this point Which brings me to the second part of my argument, which is the motion to strike all of these supplemental materials When I read the brief, I was well aware that there will be an effort and there will be amicus briefs with a petition for leave to appeal accompanying this, and I'm lining up my amicus briefs in the dreadful possibility that the Supreme Court grants it But I think there's certain parts of the materials that have been provided to this court in an effort to get this court to suggest to the Supreme Court that there's a new and valid issue to be raised here which really does not exist The materials that we specifically object to, and I'll take them in order, is number one The newspaper article that claims that the two legislators whose statements were in part the basis of the Supreme Court's determination Senator Donohue and Tenhouse, have subsequently recanted the statements that the court cited in the Croy case That's not appropriate. There's nothing in the record to suggest that the basis of the interpretation of the Supreme Court is on any infirm foundation If there's going to be something about recantation from one of the sponsors of the bill, there has to be some sort of evidence other than an article from the Peoria Journal Stock I think that's inappropriate and ought to be stricter Number two, there are numerous factual, these are not arguments, this is not some law professor doing an economic study of general principles Included in the materials are alleged studies done by the Illinois Municipal League and several other lobbying groups of municipalities in the northern part of the state of Illinois That contend to show that the financial obligation incurred by the Croy decision reaches the magnitude of $145 million for one particular municipality That's a question of fact. I will tell you, I have virtually every firefighter case against Mount Prospect Mount Prospect has not voluntarily paid a dime in health insurance premiums during my 39 year career I have a case against Hawthorne Estates and in the brief of the plaintiff they say Hawthorne Estates has spent $185,000 annual on health insurance premiums I doubt that. I have numerous firefighters from Hawthorne Estates and they haven't paid them a nickel So I am challenging that these are not erudite scholarly studies These are political texts that are provided to legislators in the course of advancing an agenda and they ought not to be part of the record in this case They would have been rejected by Judge Harrison below and they shouldn't be relied on by the court in this instance There was an article attached to the appendix of the brief that suggested that firefighters who are of advancing age Utilized the PSEBA program as a means of obtaining a windfall that instead of taking ordinary length of service retirement That they would somehow stage an injury to get their health insurance paid for the rest of their lives There's no evidence of that. That shouldn't be in the record. That shouldn't be the basis of the Illinois Supreme Court making a determination Whether or not they're going to grant a petition for leave to appeal. That should be physically removed from this court file Because it's a statement of fact. The fact isn't true and it's certainly not the case of his retirement So I believe my motion has definite merit. In terms of my motion to strike the statement of facts Supreme Court rule says that the plaintiff is obligated to recite clearly and concisely the facts that provide the basis of the appeal without argument Those portions of the pages, I think it's six through twelve that I move to strike Indeed, they talk about the orders entered by Judge Harrison, but they do it in an entirely argumentative and not a clear and concise manner They violate the Illinois Supreme Court rule. But if the court wants to leave the statement of facts in the record, I have no objection I really firmly object to these studies that establish some sort of financial reality that isn't true This kind of goes in with, they didn't argue this orally, but in their briefs they argue that there have been numerous attempts ever since CROI came out in 2003 For municipalities to get relief from the General Assembly I want to tell the court, I've been involved in some of this stuff, the studies that are attached to your brief, those studies were given to the General Assembly And the General Assembly, I think they've considered this five or eight times, has refused to change the Public Safety Employee Benefits Act So if the General Assembly, with the same information they're trying to give to this court and the Illinois Supreme Court, haven't changed the law The General Assembly knows what the Supreme Court did in 2003 I don't see why that information should be made part of this record and be considered that this court should do something that the General Assembly has refused to do for the past nine years In this case, Mr. Pyle was a lifelong career firefighter. He was hired in 1974, he was injured in 1999, he had low back fusion Actually, after he got his line of duty disability benefit, he had another low back fusion And his ability to work was to work as one of the electrical salesmen at Ace Hardware Store, as compared to a lifetime firefighter Mr. Pyle would still be working for the City of Granite City, even with his restrictions, if those handicaps had been accommodated It wasn't Mr. Pyle, in order to achieve some windfall, who elected to go on disability He was sent a letter, if you don't go on disability, you're fired. It was the city's decision And finally, even though the city concedes that Mr. Pyle meets the statutory definition under CROI, they didn't pay him Again, just like the Village of Baltimore State has a $185,000 a year liability, the City of Granite City, from the date of his injury until 2011, hasn't paid a nickel toward Mr. Pyle's health insurance So, I think there's really no question, he meets the definition under CROI, he's entitled to the benefit And that brings us to the question of, the two questions that seem to me to be of interest to this court And that is, that this is a lifetime benefit, and that somehow his reaching age 65 ends the city's obligation to him But I think we've missed the point. The question under 10A is, the employer is required to pay these premiums for the injured firefighter, if he's dead or if he's disabled So, yes, it's not a lifetime benefit, it's a benefit that's payable as long as the firefighter is disabled And if you read the CROI, if you go back to the CROI case, Justice Thomas ends the opinion with the quotation from Senator Tenhouse Because this bill was vetoed by Governor Edgar, and the veto was overridden And at the end of the CROI decision, the Senator says, this was House Bill 1347 He says, House Bill 1347 is a simple bill, it simply provides that full-time firefighters that are killed or disabled in the line of duty Shall continue their health insurance premiums being paid by the city So yes, I agree the word lifetime isn't in there, but the word catastrophically injured isn't So as long as Mr. Pyle remains disabled, and he's alive, the city is obligated to continue paying his health insurance premiums It doesn't end when he turns 65, it doesn't end because he mandatorily would have been required to retire at age 65 It doesn't end when some Medicare benefit becomes available The obligation of the city under 10A is to pay as long as the catastrophic injury disables him And it disables him today, the city is obligated today to pay his premiums That is the focus, and if you compare, it's really interesting that the city would bring to this court's attention The Fireman's Continuation of Insurance Act, which was a statute that was passed before the CEBA The insurance plan of the city, of Granite City, isn't in the record I was actually somewhat surprised when I prepared my brief to see it wasn't in the record But the basic provisions are mandated by Section 367F And it says that no policy shall be entered unless it provides that a firefighter who is disabled shall continue to be eligible for coverage until he or she dies, at which time his or her survivor gets the benefit Now the word lifetime benefit is in that statute But the point is, this 367F, as a matter of law, must be in the city of Granite City's policy And therefore their policy must make this available to Mr. Pyle for his life It's mandated by the statute And if the policy is there after 65, they have to pay the premium under Section 10A And before we leave this, I know that Mr. Pyle isn't married, he was at one time married, but unfortunately he's not But if the argument of the city of Granite City is correct, one of the firefighters killed A 50-year-old Granite City firefighter is killed on a fire He has a 40-year-old wife Is the city seriously going to come before this court and say, well, this is the year 2035 Mr. Duda, if he hadn't died at this fire, would have been 65 And at 65 he would have been eligible for Medicare Therefore the widow doesn't get her health insurance paid for That's not an argument that would realistically be made The fact that Mr. Pyle lived to be 65 is irrelevant to the application of Section 10A So the final question is Medicare And there are two parts of the Medicare argument that I find somewhat entertaining The first is, the availability of Medicare benefits the city It reduces their obligation And if you look at Section 10, it makes a provision for the availability of substitute insurance And you've got to read it, because the city uses words that are close but not right on the point Like the city will say in their brief, the availability of Medicare extinguishes Mr. Pyle's claim Or it eliminates his claim But let's read what the section says It says health insurance benefits payable, not available, not something that can't be secured Health insurance benefits payable from any other source shall reduce benefits payable under this section There is no intention in that language to shift the payment from the city to Mr. Pyle All this says is if Mr. Pyle has a chance to get other insurance paid by a third party It reduces what they pay It doesn't say they don't pay It says what they pay goes down And that's what the statute reads And the record in this case shows that Mr. Pyle has taken advantage of that from day one The obligation to the city that they have so frustratingly ignored Was approximately $2,200 a year for a guy who worked for them beginning in 1974 Until he was catastrophically injured extinguishing somebody's fire And then the second one, and this is the great one Under the Medicare program, there are supplemental policies available That provide a mechanism to take care of co-payments and deductibles and things of that nature So the city has taken the word supplement And they plugged it into section 10A And 10A says that the health insurance plan that they have to pay for is the basic plan without supplements And because the word supplement is the same Ha ha! They think that you are going to fall into the trap That supplement vis-a-vis Medicare means supplement vis-a-vis a basic health insurance plan I can tell you right now I've been involved in this statute The statute's focus on supplement is dental and vision Many cities used to provide all sorts of supplemental benefits to their basic health insurance They provided dental care Some of them had cosmetic care Some of them had vision care, brain care That's what the supplement was talking about It wasn't talking about some sort of down the road Medicare It was talking about the basic health plan provided by the city at the time the employee was hired And the time the employee was catastrophically injured The two words supplement have totally different definitions The one in the PSEVA statute refers to excess additional benefits Above and beyond the benefits provided Supplement for Medicare is a term of art Dealing with old people like myself Who want to avoid co-payments and deductibles under the basic plan I would really urge this court to get rid of this hysterical information that's attached to the plaintiff's brief It's not provided for in Rule 341 I would really urge this court not to even consider suggesting that the Illinois Supreme Court revisit CROI And I urge this court to compel the city to meet their obligations To pay Mr. Pyle as long as his disability lasts And not to punish him for taking advantage of an additional plan that became payable If the city is upset about the supplemental plan, let's go back to the basic plan The 367 Act says that there's a basic plan that they have to maintain for his life Let Mr. Pyle go back to that plan They can pay for that plan It'll be twice as much as they're paying now But we'd be amenable to that If there are any questions, I'd be glad to answer them Otherwise, I appreciate it Is Medicare equal to the basic plan or is it Medicare plus the supplement? To be honest, I don't know I haven't compared it I haven't compared it If he hadn't been injured, his benefits would be reduced once he became Medicaid eligible Is that right? If he hadn't been injured, his basic... Well... So Medicare would have kicked in What would have happened if he hadn't been injured is at age 65 He would have had to start paying the premiums Now, whether he'd be required to take Medicare, I'm not sure But the point is, if he hadn't been injured, it would be his... What makes it not his obligation is the fact that he was injured at the end of his career If his career had gone to the end of the line, he would have been required to pay himself I don't understand why Medicare is not any other source that would reduce the city's obligations I think it is another source I actually think what Mr. Pyle has done is in accordance with the statute I'm just saying that it doesn't exonerate the city's obligation to pay it Yes, that's... I have no objection to Medicare taking over his coverage  Of course, they haven't done a premium so far So basically your position is, since the statute does not indicate cessation of the benefits With Medicare, it's a supplement to be treated And it talks about death but not cessation at the instance of Medicare So it stays a supplement until he passes away He is required to accept any insurance payable from a third source That's Tenet, the one I read Right I think he's required to take that If it becomes available, then he has to take it But it doesn't relieve them of the obligation to pay it That's my question The point of the statute is, the statute says they pay it once the injury occurs There's no terminus for the payment until he dies That's what counsel read in her argument Said if he dies, then these other potential claimants will receive the money But if he doesn't die, they still make the payment And from Justice Wexman, I agree that if he had never been hurt, he'd be paying his own premium But that's the point of the statute The point of the statute is, firemen get killed and lose their careers routinely Doing the kinds of things that Captain Pyle did The public, at that point in our history, wanted to protect firefighters and their families from the loss Because the problem is, if you go out in the world, no one's going to cover these conditions These are all pre-existing conditions But for Obamacare, Mr. Pyle wouldn't even have had any coverage Briefly, I'd first like to address counsel's discussions with respect to the other municipalities that he's been involved with And what his interpretation is of what supplemental is and supplemental is None of that is before the court in the briefs or in the record or what's been recited to you thus far today And as such, I would take that with a grain of salt with respect to counsel's imposition of his other experiences But what I do want to discuss is the fact that counsel has just said to us that the employer plan is contemplated under 10A It says the employer's plan I believe that counsel has just conceded that the employer plan is the plan that comes out of the Fireman's Continuance Privilege Because the Illinois Insurance Code has developed this caveat that says you have to have plans in place for these people Otherwise, insurers wouldn't even provide these plans So the Illinois Insurance Code, under the Fireman's Continuance Privilege at 367F, provides for this contingency I agree with him that it does And what it says is if a person electing continued coverage under this section becomes eligible for Medicare coverage And I'm reading directly out of the statute Benefits under the group policy may continue as a supplement to the Medicare coverage upon payment of any required premiums To maintain the benefits of the group policy as supplemental coverage The city has not created this argument of the word supplemental Supplemental was utilized first in 1991 at the creation of the Fireman's Continuance Privilege Particularly with respect to this particular issue of the receipt of Medicare coverage Then in 1997 when the statute was passed, it specifically stated the employer's health insurance plan does not include supplemental benefits Now I understand that counsel is asserting that he believes supplemental means dental health Things not akin to the traditional health care plan There's no indication of that in the statute There's no indication of that in any of the case law And in fact, when you review what a Medicare supplement plan means It doesn't mean necessarily that it's going to cover cosmetic procedures or just where it meets up with deductibles or co-pays It's a supplement But what we know is that as Your Honor has already posed the question Is once you attain age 65, regardless of your prior status If you have paid Medicare taxes in this country, you're eligible for Medicare So at that point, everyone is somewhat on an equal playing field And the defendants admit that the PSCBA, yes, in fact, was to make sure that these persons who are injured aren't left without coverage And that's what it does From the time period that you are received If you go forward with the definition of PROHE and apply that as we have at present A line of duty disability pension, you receive it You have the fireman's continuance privilege And what the PSCBA does is it pays that for that person Other persons who receive non-line of duty disabilities or take traditional retirements Also have that fireman's continuance privilege But what the PSCBA does is says the city is going to make that payment for you Subject to any of the other benefits they have available That's the benefit of the PSCBA It says we're not going to leave you without coverage And because your earning capacity has been reduced, we'll make that payment for that period of time But at age 65, when everyone becomes Medicare eligible And persons, because of the fireman's continuance privilege, still have access to the supplemental coverage The fireman's continuance privilege, as counsel points out, says disabled persons have to be eligible They can't exclude them They can't exclude them as a function of what's already been present in the Illinois Insurance Code since 1991 The benefit of the PSCBA is for that time period between disability and receipt of Medicare And I would like to clarify briefly, defendants have never asserted in this action That if Mr. Kyle had had a spouse with an age difference of 10, 15 years Whatever the situation would be, that it would be entitled to discontinued Medicare eligibility There are private companies and private employers throughout this country who deal with that situation every day Where one of the spouses ages into Medicare before the other one does And that's what you deal with The person who's non-Medicare continues on the non-Medicare plan The person who's Medicare eligible has to move over to the supplemental Medicare coordinated plan It's a requirement It comes from the Department of Health and Human Services That if you're age 65 and you're not employed, Medicare is primary It becomes primary which supplants the requirement of the employer's health insurance plan There is no employer's health insurance plan for a person who's over age 65 and receiving Medicare If you look to the plain wording of the PSCBA, it's just not there There is no such thing And as such, the defendants would ask that this court find that it is first not a lifetime benefit Because there is no definition provided for in the statute that it is a lifetime benefit But that in the event that it is a lifetime benefit, that where a person receives Medicare That that Medicare receipt extinguishes the obligation because there is no longer an employer's health insurance plan And at no point has the court or have the defendants ever asserted to the court that it was Mr. Pyle's obligation to pay If he is entitled to the PSCBA benefits If he is entitled to the PSCBA benefits, it does clearly say for the employer's plan And so I would take issue with plaintiff's counsel where he indicated that we want to make Mr. Pyle pay That is not the situation The question is, preliminarily, does he qualify? And then now, if he qualifies, does it continue now that he is over age 65? I see that my time has concluded. Thank you for your time, Your Honor Thank each of you for your arguments this morning We will take the matter under advisement to provide you with a decision